IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Robert Gene Rega, | ) | C/A No. 1:19-259-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND** |
| | ) | **REPORT AND RECOMMENDATION** |
| Lorraine Rega, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Robert Gene Rega filed this state law damages action against Defendant Lorraine Rega, invoking the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[1] The parties are proceeding without counsel. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the parties' cross motions for summary judgment. (ECF Nos. 83 & 90.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the parties of the summary judgment and dismissal procedures and the possible consequences if they failed to respond adequately to the opposing party's motion. (ECF Nos. 85 & 93.) Robert[2] filed a response in opposition to Lorraine's motion, which Robert supplemented, and to which Lorraine replied.[3][4] (ECF No. 100.) Having reviewed the record

---

[1] Robert files this action *in forma pauperis* under 28 U.S.C. § 1915.

[2] Because the parties share a surname, the court refers to them, respectfully, by their first names to avoid confusion.

[3] Lorraine's motion for summary judgment is also her response to Plaintiff's motion.

[4] The parties both moved to strike each other's responses to the summary judgment motions. (ECF Nos. 98 & 107.) Those motions are denied, as neither party has identified a basis upon which such relief can be granted.



presented and the applicable law, the court concludes that this action should be dismissed because the court lacks subject matter jurisdiction.

## BACKGROUND

The parties strongly disagree over the facts in this case. The central issue in this case is whether Lorraine broke an agreement she had with Robert to use some of Robert's money to take care of Robert's mother. Robert is incarcerated in Pennsylvania. Lorraine lives in South Carolina and was previously married to Robert's brother. In his verified pleading, Robert alleges that while incarcerated between 2015 and 2018, he regularly spoke with Lorraine by telephone to arrange for care of his mother,[5] who was diagnosed with early stage dementia and Alzheimer's disease in 2017. (Am. Compl. ¶¶ 10-11, ECF No. 15 at 4.)

Robert alleges that in April 2017 he sent Lorraine $1,480 in "petty cash" via his attorney so that Lorraine could make "online purchases" for Robert's mother. (Id. ¶ 14.) He also alleges that in February 2018 he sent $2,500 to his mother, but then sent the same money to Lorraine for "safe keeping." (Id. ¶ 16, ECF No. 15 at 5.) Robert alleges he considered the $2,500 to be his "personal savings" and that Lorraine agreed to not use the money for any reason and to return the money at Robert's request. (Id. ¶¶ 16-17.) Robert alleges that in March 2018 he requested that Lorraine use up to $400 of his "petty cash" to buy a digital surveillance system for his mother's home, which Lorraine agreed to monitor and report any problems to Robert. (Id. ¶¶ 18-19.) Robert alleges Lorraine purchased the surveillance system with Robert's mother's debit card instead, so Robert reimbursed his mother. (Id. ¶ 18.)

---

[5] Robert's mother lives in Pennsylvania.

However, Robert alleges he and Lorraine disagreed over how to properly sync Lorraine's cell phone to the surveillance system. (Id. ¶¶ 20-22., ECF No. 15 at 5-6.) Robert alleges he and Lorraine "tentatively discussed" having his mother's assistant mail the system to Lorraine so that she could sync her phone to the system. (Id. ¶ 22.) Robert further alleges he and Lorraine discussed the "possibility" he would have his laptop mailed to Lorraine for safekeeping, and he alleges Lorraine "agreed to hold and secure" the laptop if it was sent. (Id. ¶ 23, ECF No. 15 at 6.)

Robert alleges he never finally decided whether to have the surveillance system and laptop mailed to Plaintiff. (Id. ¶ 28, ECF No. 15 at 7.) Instead, Robert alleges, in August 2018, Lorraine misled Robert's mother's assistant into believing that Robert authorized the shipping of the surveillance system and laptop to Lorraine, and the assistant shipped them to Lorraine that day. (Id. ¶¶ 28-29.) Robert alleges he "acquiesced to the preemptive shipping" of the items because Lorraine assured him that she would return them at his request. (Id. ¶ 31.)

After that, Robert alleges, Lorraine began making excuses for why she would not use his petty cash to make purchases Robert requested she make for his mother. (Id. ¶ 33, ECF No. 15 at 8.) Robert also alleges that he began requesting that Lorraine send him $300 of his money every weekend but Lorraine gave him excuses why she could not send it. (Id. ¶ 35.) Robert alleges that sometime between September 25 and October 18 of 2018, he repeatedly called Lorraine requesting that his entire savings, laptop, and surveillance system be mailed to his mother. (Id. ¶ 36, ECF No. 15 at 8-9.) Robert alleges he has received only $300 from Lorraine, that Lorraine has refused to take his calls, and that Lorraine contacted Robert's prison to ask that Robert be prohibited from calling her. (Id. ¶¶ 36-39, ECF No. 15 at 9.) Robert alleges Lorraine has unlawfully retained $2,200 of his personal cash, the digital surveillance system worth approximately $400, and his laptop with

PJG

propriety software worth $83,700. (Id. ¶ 42, ECF No. 15 at 9-10.) Robert claims Lorraine used their personal history and his trust in her to scam him out of his property. (Id. ¶ 41, ECF No. 15 at 9.)

Robert filed this action on January 20, 2019. Robert lists various state law causes of action seeking damages on tort, contract, and equitable theories of relief. Specifically, Robert lists causes of action for conversion, fraud, negligence, trespass, replevin, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, assumpsit, promissory estoppel, and unjust enrichment. Robert seeks specific damages of $86,300 for his lost property and $100,000 in punitive damages.

Robert filed this matter asserting that the court has subject matter jurisdiction over this controversy based on diversity jurisdiction.[6] (Am. Compl. ¶¶ 2-5, ECF No. 15 at 3.) In her motion for summary judgment, Lorraine argues that the court lacks jurisdiction over this action because Robert fails to meet the amount in controversy requirement of 28 U.S.C. § 1332(a). Specifically, she challenges Robert's claim that the software on the laptop computer is worth $83,700. (ECF No. 90 at 1-2.) In light of Lorraine's *pro se* status, the court construes this argument as seeking dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[7][8]

---

[6] Robert raises only state law causes of action in his pleading, thus federal question jurisdiction is not implicated here.

[7] In light of the court's finding that it lacks jurisdiction, the court need not address the other arguments in the parties' motions for summary judgment.

[8] Lorraine purports to assert counterclaims, seeking $300,000. However, her counterclaims are merely denials of Robert's allegations, and she has not actually asserted any causes of action. Thus, the court has not considered Lorraine's purported counterclaim in calculating the amount in controversy.

*PJG*

# DISCUSSION

A.  **Applicable Standard**

Dismissal under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines. The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Erickson v. Pardus, 551 U.S. 89 (2007), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

*PJG*

B.  **Amount in Controversy**

This court has original jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).[9]  "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 135 S. Ct. 547, 553 (2014) (citing Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 276 (1977)).  However, if the plaintiff's allegation is challenged, the plaintiff bears the burden of proving the existence of the court's jurisdiction by a preponderance of the evidence.  Hartford Ins. Grp. v. Lou-Con Inc., 293 F.3d 908, 910 (5th Cir. 2002); Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997); Cole v. Long John Silver's Rests., Inc., 388 F. Supp. 2d 644, 651 (D.S.C. 2005); 14AA Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3702.2 (4th ed. 2019) (collecting cases).  The plaintiff's allegation of jurisdiction must be supported by showing that it does not appear to a legal certainty that the claim for relief is for less than the statutorily prescribed amount in controversy.  See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938);  McMillan v. Sheraton Chicago Hotel & Towers, 567 F.3d 839, 844 (7th Cir. 2009).  The plaintiff must meet this burden with "competent proof."  McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936); McMillan, 567 F.3d at 844; see also Lee v. Citimortgage, Inc., 739 F. Supp. 2d 940 (E.D. Va. 2010).  "[T]he amount in controversy for jurisdiction purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit."  14AA Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3702.5 (4th ed. 2019).

---

[9] There is no dispute that the parties here are citizens of different states.



Robert seeks compensatory damages of $86,300 for his lost property and $100,000 in punitive damages. Nearly all of his claim for compensatory damages is predicated on his allegation that the software saved on the laptop is worth $82,500. Robert alleges in his verified complaint that the laptop is worth $82,500 because it includes various upgrades and "proprietary software" developed by Robert and his brother. In his verified pleading, Robert alleges, verbatim:

> Plaintiff avers that the Defendant was fully informed that the Lap Top with its internal upgrades alone cost over $1,200.00, but also that it contained proprietary software that was in development which included, but not limited to, (An Algorithm Software Program); including (An Android Application for Windows), which was in development by Plaintiff and Plaintiff's brother, Michael John Rega, before his death in 2015, and that of which was close to completion.
>
> Plaintiff avers that this software constituted over 1,100 hours of laborious programming, comprising of (iOS; Android; and Java) languages, at a current market value of not less than $75.00, and hour; or approximately $82,500.00, to reproduce today. Moreover, none of this data was backed-up. Here, the C.D. ROMS which contained the back-up files were inadvertently destroyed when much of the contents of Plaintiff's mother's apartment suffered water damage in 2017, and were thrown away. Plaintiff being incarcerated, the files were never backed-up. The Defendant has the only copy of the software.
>
> Plaintiff avers that the Lap Top contained all of Plaintiff's, and Plaintiff's mother's personal information, which includes, but is not limited to, Social Security Numbers; Utility Accounts; Account Passwords; Medical Records, Etc. Moreover, none of this data was backed-up. . . . The Defendant has the only copy of this information.

(Am. Compl. ¶¶ 24-26, ECF No. 5 at 6-7) (errors in original).

In response to Lorraine's argument that Robert cannot prove that the software is worth $82,500, Robert argues that he "provided proof by public access, of what it would cost to reproduce the software today" and cites to "exhibits" he previously filed with the court.[10] (Pl.'s Mot. Summ. J. ¶¶ 54-55, ECF No. 83-1 at 10; Pl.'s Resp. Opp'n to Def.'s Mot Summ. J. ¶ 2, ECF No. 100-1 at

---

[10] The exhibits were attached to Robert's request for admissions. (ECF No. 84.)

PJG

1-2.) One exhibit cited by Robert appears to be an online advertisement that shows the hourly rate at which a freelance software developer can be hired, but Robert does not explain where or when he obtained this advertisement. (ECF No. 84 at 82-86.) The other exhibits do not relate to the cost to reproduce the software.

The court finds that Robert has failed to meet his burden of showing that the value of the software is $82,500. Robert's contention that the value of the software can be measured solely by the hourly cost one would have to pay a software developer to reproduce the lost software is unsupported by the law. His estimate measures the value of a software developer's labor, not the software itself. See 11 S.C. Jur. Damages §§ 10, 52 (2019) (providing that for injury to personal property for which a market exists, damages are generally measured by market value); Duke Power Co. v. Thornton, 401 S.E.2d 195, 196 (S.C. Ct. App. 1991) ("As a general rule, the measure of damages for injury to personal property is the difference between the market value of the property immediately before and its value immediately after the injury."). Even if that were a proper measure of damages, to the extent Robert claims that the damages he seeks are compensation for the lost value of time spent by his brother to create the software, he fails to provide any evidence that his brother's labor was worth $75 per hour (or that the value of the labor is recoverable by him). The advertisement Robert submitted purports only to show the hourly wage a freelance software developer could receive for some unidentified project, but Robert provides no evidence of what his brother's labor was worth for this project.[11] See Can-Dev, ULC v. SSTI Brewster Brampton, LLC, 1:15-cv-1060, 2016 WL 8467196, at * 3 (M.D.N.C. Sept. 12, 2016) ("A determination of whether

---

[11] Moreover, the court does not consider a printout of an online advertisement with no reference to its source or date of origin to be competent proof.



the value of the object of the litigation satisfies the jurisdictional threshold requires 'objective criteria,' not subjective valuations.") (quoting Pease v. Medtronic, Inc., 6 F. Supp. 2d 1354, 1357 (S.D. Fla. 1998)). Robert's assertion that his brother's labor was worth $75 per hour is speculative and unsupported by any objective criterion.

As to the market value of the software, considering Robert's allegation that his brother created the software, Robert has provided no proof that he has any ownership interest in the software other than his own self-serving and conclusory affidavit that declares that it "belongs entirely" to him.[12] (Pl.'s Aff. ¶ 4, ECF No. 15-1 at 22.) But even if Robert could prove that he owned the software, he fails to provide *any* evidence of its market value. See Duke Power Co., 401 S.E.2d at 196. Therefore, he fails to provide competent proof that the value of the software is enough to satisfy the amount in controversy requirement. See McNutt, 298 U.S. at 189. Moreover, he fails to provide any competent proof that he has a right to enforce or protect in this matter in regard to the software on the laptop. 14AA Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3702.2.

Robert's claim for $100,000 in punitive damages is also wholly unsupported. See One Point Sols., LLC v. Borchert, 486 F.3d 342, 348 (8th Cir. 2007) (providing that when determining the amount in controversy, a claim for punitive damages should be given closer scrutiny than a claim for actual damages, and the plaintiff must support the claim by competent proof); Saval v. BL Ltd.,

---

[12] Another exhibit filed by Robert purports to describe the software his brother was designing as a component for a product called "Forget-me-not," a sensor that would alert a vehicle operator if they left a child in the backseat of a car. (ECF No. 84 at 79.) Robert also provides an affidavit from his mother in which she declares that she knew Robert and his brother "were discussing designing software programs to sale [sic] for over two years prior to [the brother's] death." (Joan Rega Aff. ¶ 4, ECF No. 84 at 87.)

*PJG*

710 F.2d 1027, 1033 (4th Cir. 1983) ("[C]laims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined."). Initially, the court notes that as to Robert's claims based on equitable theories of relief, punitive damages are not available. See Hale v. Finn, 694 S.E.2d 51, 58 (S.C. Ct. App. 2010) (citing Welborn v. Dixon, 49 S.E.2d 232, 235 (S.C. 1904)); see also Blanton Enters., Inc. v. Burger King Corp., 680 F. Supp. 753, 776 n.24 (D.S.C. 1988). As to Robert's contract-based claims, he can recover punitive damages only if he can show that the breach of contract was accompanied by a fraudulent act. See Floyd v. Country Squire Mobile Homes, Inc., 336 S.E.2d 502, 503-04 (S.C. Ct. App. 1985). Otherwise, to recover punitive damages, Robert must show by clear and convincing evidence that the defendant's conduct was willful, wanton, or in reckless disregard of the plaintiff's rights. McCourt By & Through McCourt v. Abernathy, 457 S.E.2d 603, 607 (S.C. 1995); Solanki v. Wal-Mart Store No. 2806, 763 S.E.2d 615, 618 (S.C. Ct. App. 2014).

Here, Robert fails to point to any evidence that shows that Lorraine acted willfully, wantonly, or in reckless disregard for his rights. Robert claims he told Lorraine that he *might* have pancreatic cancer, but she misunderstood him, thinking he had pancreatic cancer and would die in six to twelve months, and thus she disposed of the money and property she was holding for him. (Pl.'s Resp. Opp'n to Def.'s Mot. Summ. J. ¶ 21, ECF No. 100-1 at 5.) Lorraine apparently donated the property to charity. (Pl.'s Mot. Summ. J. ¶ 37, ECF No. 83-1 at 7.) Therefore, Robert's own assertions posit that Lorraine's actions were based on a misunderstanding rather than wanton or reckless behavior. And otherwise, Robert fails to point to any evidence from which a reasonable jury could find that Lorraine acted willfully, wantonly, or in reckless disregard for Robert's rights. McCourt, 457 S.E.2d at 607. Accordingly, Robert's claim for $100,000 in punitive damages is unsupported by any

evidence.  See McMillian, 567 F.3d at 845 (7th Cir. 2009) ("[W]hen the amount in controversy is contested, the parties asserting federal jurisdiction must come forward with competent proof that they have satisfied the jurisdictional threshold and not simply point to the theoretical possibility of recovery for certain categories of damages.")

Therefore, Robert fails to meet his burden of providing competent proof that the amount in controversy in this matter meets the jurisdictional threshold under 28 U.S.C. § 1332(a) because he has failed to show that it does not appear to a legal certainty that the claim for relief is for less than the statutorily prescribed amount in controversy.  See St. Paul Mercury Indem. Co., 303 U.S. at 289; McNutt, 298 U.S. at 189.  Consequently, the court lacks subject matter jurisdiction over this matter.

## RECOMMENDATION

Based on the foregoing, the court recommends this matter be dismissed for lack of subject matter jurisdiction.  In light of the court's recommendation, the parties' pending motions are terminated as moot.  (ECF Nos. 20, 28, 30, 35-38, 40-41, 47, 49, 71, 73, 74, 79, 82-83, 90, 98-99, & 107.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 17, 2019
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).