# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Robert Gene Rega, | ) |
|                 Plaintiff, | ) Civil Action No.: 1:19-cv-00259-JMC |
| v. | ) **ORDER AND OPINION** |
| Lorraine Rega, | ) |
|                 Defendant. | ) |

Plaintiff Robert Gene Rega ("Robert") filed this state law action against Defendant Lorraine Rega ("Lorraine"), invoking the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (ECF No. 15 at 2-3 ¶¶ 1-2.) The parties are proceeding *pro se*. (ECF No. 115 at 1.)

This matter is before the court upon review of the Magistrate Judge's Report and Recommendation (ECF No. 115) ("Report"), filed September 17, 2019, recommending that this case be dismissed for lack of subject matter jurisdiction. For the reasons stated below, the court **REJECTS** the Report and **FINDS** that it has subject matter jurisdiction over Plaintiff's action.

## I. FACTUAL AND PROCEDURAL HISTORY

The parties strongly disagree over the facts in this case. The central issue is whether Lorraine has unlawfully retained Robert's property. (ECF No. 15 at 9-10 ¶ 42.)

Robert is incarcerated in Pennsylvania. (*Id.* at 3 ¶ 8.) Lorraine lives in South Carolina and was previously married to Robert's brother. (*Id.* ¶¶ 7, 9.) Robert alleges that while incarcerated between 2015 and 2018, he regularly spoke with Lorraine by telephone to arrange care for his mother, Joan, who was diagnosed with early stage dementia and Alzheimer's disease in 2017. (*Id.* at 4 ¶¶ 10-11.) He contends that he sent Lorraine $1,480.00 in cash to make online purchases for Joan in April 2017. (*Id.* at ¶ 14.) Robert also maintains that he sent Joan $2,500.00 by check in

1

February 2018 which was then sent to Lorraine for safekeeping. (*Id.* at 5 ¶ 16.) He alleges that Lorraine agreed not to use the money and to return it upon Robert's request. (*Id.* ¶ 17.) Robert claims that he asked Lorraine to use up to $400.00 of his money to purchase a digital surveillance system for Joan's home in March 2018 and that Lorraine agreed to monitor the system and report any problems to him. (*Id.* ¶¶ 18-19.) He alleges that Lorraine purchased the surveillance system with Joan's debit card and he later reimbursed his mother for the purchase. (*Id.* ¶ 18.)

Robert further maintains that he and Lorraine discussed the "possibility" of mailing his laptop from Joan's home to Lorraine for safekeeping. (*Id.* at 6 ¶ 23.) He claims that Lorraine "agreed to hold and secure" the laptop if it was sent. (*Id.*) Robert contends that Lorraine was fully informed that the laptop cost over $1,200.00 and contained "proprietary software" worth $82,500.00. (*Id.* ¶¶ 24-25.) Robert claims that before he decided to mail the laptop to Lorraine, Lorraine told Joan's personal assistant, Vicki Hoyle, that he wanted the surveillance system and laptop mailed to Lorraine's home. (*Id.* at 7 ¶ 28.) He maintains that Vicki then shipped the items to Lorraine on August 20, 2018. (*Id.* ¶ 29.) Robert asserts that he "acquiesced to the preemptive shipping" of the items because Lorraine assured him that she would return them at his request. (*Id.* ¶ 31.)

Robert claims that after Lorraine received the surveillance system and laptop, she declined to make purchases he requested for Joan with his money. (*Id.* at 8 ¶ 33.) He contends that he then asked Lorraine to send him $300.00 a week from his savings in order to pay for his mother's care and repeatedly asked Lorraine to mail his savings, laptop, and surveillance system to his mother. (*Id.* at 8-9 ¶¶ 35-36.) Robert maintains that he has only received $300.00 from Lorraine and that Lorraine refuses to take his calls. (*Id.* at 9 ¶¶ 37-39.)

Robert filed this lawsuit on January 30, 2019 (ECF No. 1) and an amended complaint (ECF No. 15) on February 21, 2019, alleging several state law causes of action, including conversion, fraud, negligence, trespass, replevin, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, assumpsit, promissory estoppel, and unjust enrichment.

## II. LEGAL STANDARD

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court, which has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's Report and Recommendation to which specific objections are filed and reviews those portions which are not objected to for clear error, including those portions to which only "general and conclusory" objections have been made. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

The court is required to interpret *pro se* documents liberally and such documents are held to a less stringent standard than those drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When reviewing a *pro se* complaint, federal courts should carefully examine the plaintiff's factual allegations to determine whether they could provide a basis for relief. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). However, the "special judicial solitude"

3

with which a district court should view *pro se* complaints "does not transform the court into an advocate." *Weller v. Dep't of Soc. Servs. for Balt.*, 901 F.2d 387, 391 (4th Cir. 1990).

28 U.S.C. § 1332(a) provides that a district court shall "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs … and is between citizens of different States[.]" A plaintiff generally satisfies the amount in controversy requirement by pleading an amount above the jurisdictional threshold in good faith. *See Shanaghan v. Cahill*, 58 F.3d 106, 111 (4th Cir. 1995) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). A case may only be dismissed for an insufficient amount in controversy if it appears to a "legal certainty" that the claim is for less than the jurisdictional threshold. *Id.* If the existence of the jurisdictional amount in controversy is disputed, the person asserting jurisdiction bears the burden of showing that it does not appear to a legal certainty that the claim for relief is for less than the jurisdictional amount with competent proof. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). The legal certainty test sets a high threshold that is not often met. *See Work v. U.S. Trade, Inc.*, 747 F. Supp. 1184, 1188 (E.D. Va. 1990); 14AA Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3713 (4th ed. 2020). "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved, for jurisdictional purposes, in favor of the subjective good faith of the plaintiff." *McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957).

### III. ANALYSIS

In the Report, the Magistrate Judge recommended that the action be dismissed for lack of subject matter jurisdiction because Robert failed to prove that the alleged amount in controversy met the jurisdictional threshold under § 1332(a). (ECF No. 115 at 11.) Diversity of citizenship is

not in dispute because Robert is a citizen of Pennsylvania and Lorraine is a resident of South Carolina. (*Id.* at 6 n.9.)

Robert seeks compensatory damages of $86,300.00 for his lost property and $100,000.00 in punitive damages. (ECF No. 15 at 12-27.) He claims that he is entitled to $86,300.00 in compensatory damages because Lorraine has not returned his $2,200.00 in savings, $400.00 surveillance system, $1,200.00 laptop, or $82,500.00 software. (*Id.*)

The most controversial part of Robert's claim for damages is the value of the allegedly "proprietary software" on the laptop. (*Id.* at 6 ¶ 24.) In her Motion for Summary Judgment (ECF No. 90), Lorraine argued that Robert failed to meet the amount in controversy requirement of § 1332 because the software is not worth $82,500.00. (ECF No. 90 at 1-2.) The Magistrate Judge found that Robert failed to meet his burden of showing that the value of the software is $82,500.00 because he "failed to show that it does not appear to a legal certainty that the claim for relief is for less than the statutorily prescribed amount in controversy." (ECF No. 115 at 8.) However, the record does not support this finding.

In support of his claims for damages, Robert maintained that the laptop contained software he was developing with his brother and that the software was "close to completion." (ECF No. 15 at 6 ¶ 24.) Robert claimed that the software would cost $82,500.00 to reproduce because it required 1,100 hours to create and the current market rate for a programmer is $75.00 an hour. (*Id.* ¶ 25.) He provided an affidavit from Joan averring that she knew her sons were "designing software programs" and estimating that they spent between "a Thousand to Twelve Hundred Hours" working on the programs. (ECF No. 15-1 at 21.) He also provided a three-page description of the software and its features. (*Id.* at 8-10.)

Based on these assertions, it is not legally impossible for Robert to recover $82,500.00 for

5

the software.  It is certainly possible that a jury could award him $82,500.00 for the loss of the software under the measure of damages for his causes of actions.  In South Carolina, the measure of damages for breach of contract is "whatever damages follow as a natural consequence and proximate result of such breach."  *See, e.g.*, *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962).  Under this standard, a jury could decide that Robert is entitled to the replacement cost of the software.  A jury could similarly decide to award Robert $82,500.00 under the measure of damages for conversion.  South Carolina law provides that the measure of damages for conversion is "the value of the property with interest" and that the jury may award the highest value of the property up to the time of trial.  *See, e.g.*, *Industrial Welding Supplies Inc. v. Atlas Vending Co., Inc.*, 277 S.E.2d 885, 886 (S.C. 1981).  Since the standard does not specify how to value converted property, a jury could decide that the software is appropriately valued at $82,500.00.  Since there is a possibility that a jury could award Robert $82,500.00 in compensatory damages for the lost software, Robert has provided competent proof sufficient to meet the legal certainty test.  Therefore, Robert has met the amount in controversy requirement of § 1332(a) and the court has subject matter jurisdiction over the case.  This conclusion is further supported by the principle that uncertain rights of recovery should be resolved in favor of the plaintiff for jurisdictional purposes.  *See McDonald*, 240 F.2d at 426.

## IV. CONCLUSION

After a thorough review of the Report and the record in this case, the court **REJECTS** the Magistrate Judge's Report and Recommendation (ECF No. 115), **SUSTAINS** Plaintiff's Objection and Supplemental Objection (ECF Nos. 119, 124), and **FINDS** that it has jurisdiction over Plaintiff's case.  Plaintiff's Motion to Transfer this case to the Court of Common Pleas in Aiken

County (ECF Nos. 119, 124) is **DENIED**.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 6, 2020
Columbia, South Carolina