IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Robert Gene Rega, | ) | C/A No. 1:19-259-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND** |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Lorraine Rega, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Robert Gene Rega filed this state law action to recover damages from his former sister-in-law, Defendant Lorraine Rega, invoking the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff files this action *in forma pauperis* under 28 U.S.C. § 1915. Both parties are proceeding without counsel. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the parties' cross motions for summary judgment. (ECF Nos. 83, 90, 145.[1]) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the parties of the summary judgment and dismissal procedures and the possible consequences if they failed to respond adequately to the opposing party's motion. (ECF Nos. 85 & 93.) Plaintiff filed a response in opposition to Defendant's motion, which Plaintiff supplemented, and to which Defendant replied.[2] (ECF No. 100.) Defendant's motion for summary judgment is also her response to Plaintiff's motion.

---

[1] Defendant filed a motion titled "motion to dismiss" (ECF No. 145) that essentially rehashes the arguments made in Defendant's motion for summary judgment (ECF No. 90). Accordingly, the court considers these motions in tandem.

[2] The parties both moved to strike each other's responses to the summary judgment motions. (ECF Nos. 98 & 107.) Those motions are denied, as neither party has identified a basis upon which such relief should be granted.

The court previously recommended that this matter be dismissed for lack of subject matter jurisdiction (ECF No. 115), but the assigned United States District Judge rejected the Report and Recommendation and found that the court has subject matter jurisdiction over this action. (ECF No. 141.) Accordingly, the parties' motions are now ripe for adjudication on the merits. Having reviewed the record presented and the applicable law, the court concludes that Plaintiff's motion for summary judgment should be denied and Defendant's motion for summary judgment should be granted in part and denied in part.

## BACKGROUND

The parties strongly disagree over the facts in this case. The central issue in this case is whether Defendant broke an agreement she had with Plaintiff to use some of Plaintiff's money to take care of Plaintiff's mother. Plaintiff is incarcerated in Pennsylvania. Defendant lives in South Carolina and was previously married to Plaintiff's brother.

In his verified pleading, Plaintiff alleges that while incarcerated between 2015 and 2018, he regularly spoke with Defendant by telephone to arrange for care of his mother, who lives in Pennsylvania and was diagnosed with early stage dementia and Alzheimer's disease in 2017. (Am. Compl. ¶¶ 10-11, ECF No. 15 at 4.) Plaintiff alleges that in April 2017 he sent Defendant $1,480 in "petty cash" via his attorney so that Defendant could make "online purchases" for Plaintiff's mother. (Id. ¶ 14.) He also alleges that in February 2018 he sent a check for $2,500 to his mother, representing Plaintiff's personal savings, but then had those savings transferred to Defendant by way of money orders for "safe keeping." (Id. ¶ 16, ECF No. 15 at 5.) Plaintiff alleges that Defendant agreed to not use that money for any reason and to return the money at Plaintiff's request. (Id. ¶¶ 16-17.) Plaintiff alleges that in March 2018 he requested that Defendant use up to $400 of his "petty cash" to buy a digital surveillance system for his mother's home, which

Defendant agreed to monitor and report any problems to Plaintiff. (Id. ¶¶ 18-19.) Plaintiff alleges Defendant purchased the surveillance system with Plaintiff's mother's debit card instead, so Plaintiff reimbursed his mother. (Id. ¶ 18.)

However, Plaintiff alleges he and Defendant disagreed over how to properly sync Defendant's cell phone to the surveillance system. (Id. ¶¶ 20-22., ECF No. 15 at 5-6.) Plaintiff alleges he and Defendant "tentatively discussed" having his mother's assistant mail the system to Defendant so that she could sync her phone to the system. (Id. ¶ 22.) Plaintiff further alleges he and Defendant discussed the "possibility" he would have his laptop mailed to Defendant for safekeeping, and he alleges Defendant "agreed to hold and secure" the laptop if it was sent. (Id. ¶ 23, ECF No. 15 at 6.)

Plaintiff alleges he never finally decided whether to have the surveillance system and laptop mailed to Plaintiff. (Id. ¶ 28, ECF No. 15 at 7.) Instead, Plaintiff alleges, in August 2018, Defendant misled Plaintiff's mother's caretaker into believing that Plaintiff authorized the shipping of the surveillance system and laptop to Defendant, and the caretaker shipped them to Defendant that day. (Id. ¶¶ 28-29.) Plaintiff alleges he "acquiesced to the preemptive shipping" of the items because Defendant assured him that she would return them at his request. (Id. ¶ 31.)

After that, Plaintiff alleges, Defendant began making excuses for why she would not use his petty cash to make purchases Plaintiff requested she make for his mother. (Id. ¶ 33, ECF No. 15 at 8.) Plaintiff also alleges that he began requesting that Defendant send him $300 of his money every weekend but Defendant gave him excuses why she could not send it. (Id. ¶ 35.) Plaintiff alleges that sometime between September 25 and October 18 of 2018, he repeatedly called Defendant requesting that his entire savings, laptop, and surveillance system be mailed to his mother. (Id. ¶ 36, ECF No. 15 at 8-9.) Plaintiff alleges he has received only $300 from Defendant,

that Defendant has refused to take his calls, and that Defendant contacted Plaintiff's prison to ask that Plaintiff be prohibited from calling her.  (Id. ¶¶ 36-39, ECF No. 15 at 9.)  Plaintiff alleges Defendant has unlawfully retained $2,200 of his personal cash, the digital surveillance system worth approximately $400, and his laptop with propriety software for a car sensor worth $83,700.  (Id. ¶ 42, ECF No. 15 at 9-10.)  Plaintiff claims Defendant used their personal history and his trust in her to scam him out of his property.  (Id. ¶ 41, ECF No. 15 at 9.)

Defendant's verified response in opposition to Plaintiff's motion and motion for summary judgment asserts a very different version of the facts.  Defendant alleges Plaintiff sent her $1,480 or $1,500 that Defendant was to use to buy items for Plaintiff's mother.  (Def.'s Mot. Summ J., ECF No. 90 at 4; ECF No. 90-1 at 2.)  Defendant also alleges Plaintiff sent her another $2,500 that was meant for Plaintiff's needs and Plaintiff's mother's needs.  (Id., ECF No. 90 at 4.)  Defendant claims the money was spent only on Plaintiff and Plaintiff's mother, including money for Plaintiff's mother's nursing home and Plaintiff's hospital bills.  (Id., ECF No. 90-1 at 2, 4.)

Defendant asserts she purchased the digital surveillance system for Plaintiff's mother's house, but Plaintiff's mother refused to allow the system to be installed in the house because Plaintiff's mother did not want "spies on her."  (Id., ECF No. 90 at 4.)  Defendant also asserts that Plaintiff asked her to buy an outdoor security surveillance system, which she did, but Plaintiff's mother again refused the cameras.  (Id., ECF No. 90 at 7.)  Defendant claims Plaintiff refused to allow Defendant to return the items for a refund and Plaintiff instead had Plaintiff's mother's caretaker mail the indoor surveillance system to Defendant as a "gift," and the outdoor surveillance system was left in Plaintiff's mother's closet.  (Id., ECF No. 90 at 4-5, ECF No. 90-1 at 7.)

As to the laptop, Defendant asserts Plaintiff gifted it to her and that she gave the laptop to charity.  (Id., ECF No. 90 at 13.)  Defendant also asserts that Plaintiff cannot prove that he ever

owned the laptop considering the laptop was purchased in 2010 and Plaintiff has been in prison since 1996. (Id., ECF No. 90-1 at 9.) Defendant further asserts that Plaintiff has no proof that the car sensor software ever existed or that Plaintiff's brother was capable of designing such software. (Id., ECF No. 90-1 at 13-14, 16.) Also, Defendant questions the mental competency of Plaintiff's mother, who signed an affidavit swearing to seeing Plaintiff's brother design the software. (Id., ECF No. 90-1 at 16.)

Defendant asserts that the property she retained—a surveillance camera and the laptop—were kept with the clear understanding that it was a gift from Plaintiff to Defendant, and that she made no promises to Defendant regarding the property or entered into any contractual arrangement. (Id., ECF No. 90 at 5, 12, 14.)

Plaintiff filed this action on January 20, 2019. Plaintiff lists various state law causes of action seeking damages on tort, contract, and equitable theories of relief. Specifically, Plaintiff asserts causes of action for conversion, fraud, negligence, trespass, replevin, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, promissory estoppel, and unjust enrichment. Plaintiff seeks specific damages of $86,300 for his lost property and $100,000 in punitive damages.[3]

---

[3] Defendant purports to assert counterclaims, seeking compensatory and punitive damages. (Def.'s Mot. Summ. J., ECF No. 90 at 11-17.) However, her "counterclaims" are merely denials of Plaintiff's allegations, and she has not actually asserted any causes of action of her own. To the extent Defendant attempts to assert counterclaims in her motion for summary judgment, those claims are not properly before the court because they were not asserted in Defendant's pleading pursuant to Federal Rule of Civil Procedure 13. Accordingly, Plaintiff's motion for a more definite statement, motion to strike the answer, and motion for preliminary objections, which are based on Defendant's purported counterclaims, are denied. (ECF No. 28.)

**DISCUSSION**

**A.     Summary Judgment**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing pleadings filed by a *pro se* litigant to allow the development of a potentially meritorious case, see,

e.g., Erickson v. Pardus, 551 U.S. 89 (2007), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Plaintiff's Claims**

The parties both move for summary judgment as to each of the ten causes of action listed in Plaintiff's Complaint.[4]

**1.    Conversion**

In South Carolina, a plaintiff asserting the tort of conversion must show that the defendant, without authorization, assumed and exercised the right of ownership over goods or personal chattels belonging to another to the exclusion of the plaintiff's rights. Moore v. Weinberg, 681 S.E.2d 875, 878 (S.C. 2009) (citing SSI Med. Servs., Inc. v. Cox, 392 S.E.2d 789, 792 (S.C. 1990)). The plaintiff must establish either title to or right to the possession of the personal property. Moseley v. Oswald, 656 S.E.2d 380, 382 (S.C. 2008) (citing Crane v. Citicorp Nat'l Servs., Inc., 437 S.E.2d 50, 52 (S.C. 1993)). Money may be the subject of a conversion claim if the money is capable of being identified. Moore, 681 S.E.2d at 878.

Here, there is a dispute of fact about the ownership and proper authorization of the use of the cash, laptop, and surveillance system that precludes summary judgment as to Plaintiff's conversion claim. Plaintiff claims that he owns the property and allowed Defendant to use it to

---

[4] Plaintiff actually lists eleven causes of action, one of which is "assumpsit." Plaintiff asserts that assumpsit is a claim with identical elements of breach of contract. While Plaintiff's definition of assumpsit is legally dubious, see Myrtle Beach Hosp., Inc. v. City of Myrtle Beach, 532 S.E.2d 868, 872-73 (S.C. 2000); Robert Harmon & Bore, Inc. v. Jenkins, 318 S.E.2d 371, 376 (S.C. Ct. App. 1984), Plaintiff's assumpsit claim just reasserts a breach of contract claim. (Am. Compl., ECF No. 83-2 at 26-27.) Accordingly, the court has not construed the Amended Complaint as asserting a separate claim for a contract implied by law.

care for his mother, but that Defendant, without authorization, used some of the cash for herself and took the laptop and surveillance system for her own use. Defendant claims that the property that was not spent on or used by Plaintiff's mother was a gift to Defendant from Plaintiff, and therefore, Plaintiff has no ownership interest in the property. Therefore, there is a genuine dispute of fact about the ownership and proper use of the property, which is an essential element of a conversion claim. See Moore, 681 S.E.2d at 878-79 (finding the trial court should have denied the defendant's motion for summary judgment as to the plaintiff's conversion claim because the plaintiff put forth evidence that he owned an interest in the proceeds from litigation, that the defendant was aware of the plaintiff's interest, and the defendant wrongfully disbursed the proceeds). Consequently, the parties' motions for summary judgment as to the conversion claim should be denied.

### 2. Fraud

To establish a cause of action for fraud under South Carolina law, the plaintiff must establish the following elements by clear, cogent, and convincing evidence: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. Schnellmann v. Roettger, 645 S.E.2d 239, 241 (S.C. 2007) (citing Kahn Constr. Co. v. S.C. Nat'l Bank of Charleston, 271 S.E.2d 414 (S.C. 1980).

Here, Plaintiff alleges Defendant called his mother's caretaker and knowingly and falsely asserted that Plaintiff authorized the caretaker to ship the laptop and surveillance system to Defendant. Plaintiff also asserts that the caretaker had reason to believe Defendant was truthful and that the caretaker sent the property to Defendant to Plaintiff's detriment. While these

allegations may plausibly state a claim of fraud, Plaintiff fails to point to any admissible evidence that would show that Defendant called the caretaker and lied to induce the caretaker to mail the property to Defendant. Plaintiff asserts these allegations in a verified pleading, but he fails to identify how he has personal knowledge of such facts. See generally Fed. R. Evid. 602. ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Therefore, Defendant's motion for summary judgment as to Plaintiff's fraud claim should be granted because Plaintiff fails to forecast any admissible evidence that Defendant made a false representation of fact to induce the caretaker to mail Plaintiff's property to Defendant.

### 3. Negligence

To establish negligence in South Carolina, a plaintiff must show that the (1) defendant owes a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered an injury or damages. Sabb v. S.C. State Univ., 567 S.E.2d 231, 237 (S.C. 2002).

Here again, the parties' assertion of contradictory facts precludes summary judgment. Plaintiff plausibly states a negligence claim because Defendant owed Plaintiff a duty of care when she agreed to hold Plaintiff's property and use it in a manner authorized by Plaintiff, and Defendant plausibly breached that duty by taking ownership of the property or using it in a manner inconsistent with Plaintiff's authorization, causing damage to Plaintiff.[5]  See generally Olin

---

[5] However, to the extent Plaintiff argues that Defendant "embezzled" the money or otherwise intentionally deprived Plaintiff of an ownership interest in the property, (Pl.'s Mot. Summ. J., ECF No. 83-2 at 32), such a claim is inconsistent with an assertion of negligence. See Restatement (Second) of Torts § 282 cmt. d (1965).

Mathieson Chem. Corp. v. Planters Corp., 114 S.E.2d 321, 326 (S.C. 1960) (finding a duty exists for one who assumes the responsibility for receiving and disbursing a corporation's property that is actionable by a negligence claim). On the other hand, Defendant's assertion that the property was a gift, if accepted, would preclude a finding that she owed a duty to Plaintiff or that she breached it by taking ownership or otherwise disposing of the property. Consequently, the parties' motions for summary judgment as to Plaintiff's negligence claim should be denied.

### 4. Trespass

While an action for trespass historically could have been brought for damage to personal property, as opposed to real property or land, the modern tort of trespass is confined to interference with one's right to the exclusive, peaceable possession of real property. See Babb v. Lee Cty. Landfill SC, LLC, 747 S.E.2d 468, 473 n.2 (S.C. 2013) ("While trespass may mean any 'unlawful act committed against the person or property of another,' and in that sense is the mother of all common law tort liability, we use it here in the form in which it is now generally used to mean an action to recover for an unlawful entry by another onto one's real property. With the development of tort law over the intervening centuries, those other forms of trespass have become their own distinct causes of action with their own names."). Because Plaintiff's trespass claim is not based on any ownership interest of real property, summary judgment should be granted in Defendant's favor on this claim.

### 5. Replevin

Replevin is an archaic term for a suit to recover possession of personal property and for damages for its unlawful detention, which is now codified in South Carolina's claim and delivery statutes, S.C. Code Ann. §§ 15-69-10, et seq. Farmer v. Florence Cty. Sheriff's Office, 738 S.E.2d 473, 476 n.2 (S.C. 2013). Accordingly, the court construes this claim as seeking recovery under

the claim and delivery statutes. However, even assuming such an action can be brought in federal court, Plaintiff has plainly failed to follow any of the procedures required by the claim and delivery statutes. The statutes require that the plaintiff provide an affidavit and notice to the local sheriff describing the property and the plaintiff's ownership interest, that the plaintiff obtain a bond for twice the value of the property, and that the sheriff serve the affidavit and notice on the defendant, among other requirements. See S.C. Code Ann. § 15-69-50. Consequently, Plaintiff's claim and delivery action fails as a matter of law.[6]

### 6.   Intentional Infliction of Emotional Distress

"To recover for outrage—otherwise known as intentional infliction of emotional distress—a plaintiff must establish the following: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so 'extreme and outrageous' so as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community;' (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was 'severe' such that 'no reasonable man could be expected to endure it.' " Bass v. S.C. Dep't of Soc. Servs., 780 S.E.2d 252, 260-61 (S.C. 2015) (quoting Argoe v. Three Rivers Behavioral Health, L.L.C., 710 S.E.2d 67, 74 (S.C. 2011)). When addressing whether the plaintiff has stated a *prima facie* claim of outrage on summary judgment, the South Carolina Supreme Court has stated:

> Under the heightened standard of proof for emotional distress claims emphasized in [Ford v. Hutson, 276 S.E.2d 776 (S.C. 1981)], a party cannot establish a prima facie claim for damages resulting from a defendant's tortious conduct with mere bald assertions. To permit a plaintiff to legitimately state a cause of action by simply alleging, "I suffered emotional distress" would be irreconcilable with this

---

[6] Consequently, Plaintiff's motion for a writ of seizure pursuant to Federal Rule of Civil Procedure 64 is denied. (ECF No. 40.)

> Court's development of the law in this area. In the words of Justice Littlejohn, the court must look for something "more"—in the form of third party witness testimony and other corroborating evidence—in order to make a prima facie showing of "severe" emotional distress.
>
> . . .
>
> Ford's emphasis on the plaintiff's heightened standard of proof echoes the position of the Restatement (Second) of Torts, upon which this Court relied in adopting the rule of liability for intentional infliction of emotional distress. According to the Restatement:
>
>> Emotional distress . . . includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.
>
> Restatement (Second) of Torts § 46 cmt. j.

Hansson v. Scalise Builders of S.C., 650 S.E.2d 68, 72 n.3 (S.C. 2007).

Here, Plaintiff fails to forecast any evidence, other than his own assertions, that he has suffered from severe emotional distress. Plaintiff claims that Defendant's action caused him to become depressed and attempt suicide, (Am. Compl. ¶ 105, ECF No. 15 at 24), but he fails to forecast any evidence that would corroborate such a claim. See Hansson, 650 S.E.2d at 72. Additionally, the court finds that even taking the evidence in the light most favorable to Plaintiff— that is, assuming Defendant intentionally stole Plaintiff's property—Plaintiff fails to forecast any evidence of Defendant's intent to cause emotional distress, or that Defendant was certain that such distress would occur. Consequently, the court finds that summary judgment should be granted to Defendant as to Plaintiff's outrage claim.

### 7. Negligent Infliction of Emotional Distress

In South Carolina, a claim for negligent infliction of emotional distress is limited to scenarios of "bystander liability," —that is, the plaintiff must show that the defendant's negligence injured a third party to which the plaintiff is closely related and that the plaintiff was in close proximity to the accident. Doe v. Greenville Cty. Sch. Dist., 651 S.E.2d 305, 307 (S.C. 2007); Kinard v. Augusta Sash & Door Co., 336 S.E.2d 465, 467 n.2 (S.C. 1985). Here, Plaintiff is not seeking redress for an injury to a third party. Consequently, Plaintiff's negligent infliction of emotional distress claim fails as a matter of law, and summary judgment should be granted to Defendant as to this claim.

### 8. Breach of Contract

The elements of a breach of contract action are the existence of a contract, its breach, and the damages caused by the breach. Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962); Branche Builders, Inc. v. Coggins, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009). A contract may arise from oral or written words or by conduct, but for a contract to be valid and enforceable, the parties must have a meeting of the minds as to all essential and material terms of the agreement. Allegro, Inc. v. Scully, 791 S.E.2d 140, 145 (S.C. 2016).

Here, the parties disagree as to whether a contract was even formed, but because the purported contract was formed orally, the only evidence put forth by the parties is their sworn testimony that plainly contradicts each other, as previously explained. Because the parties put forth conflicting evidence on an essential element of this claim, summary judgment is not appropriate as to Plaintiff's breach of contract claim.

### 9.     Promissory Estoppel

In South Carolina, a plaintiff asserting promissory estoppel must prove: (1) the presence of an unambiguous promise; (2) that the promisee reasonably relied upon the promise; (3) that the reliance was expected and foreseeable by the promisor; and (4) that the promisee was injured as a result of reliance upon the promise. Davis v. Greenwood Sch. Dist. 50, 620 S.E.2d 65, 67 (S.C. 2005). Promissory estoppel is a quasi-contractual remedy that should be applied where refusal to do so would result in the court's sanction of fraud or other injustice. N. Am. Rescue Prod., Inc. v. Richardson, 769 S.E.2d 237, 241 (S.C. 2015); see also Barnes v. Johnson, 742 S.E. 2d 6, 11 (S.C. Ct. App. 2013) (stating that the elements of a promissory estoppel claim are designed to provide a remedy where contract law cannot).

Here, the parties agree that Plaintiff sent Defendant money on the condition that it be used to support Plaintiff's mother. Therefore, the first three elements of promissory estoppel are arguably met here because Plaintiff purportedly relied on Defendant's promise to spend the money on his mother and sent the money that was purportedly misappropriated by Defendant. However, the parties disagree as to whether the money (or how much of it) was spent on Plaintiff's mother or retained by Defendant. (Pl.'s Mot. Summ. J., ECF No. 83-1 at 4-6; Def.'s Mot. Summ. J., ECF No. 90-1 at 2.) Therefore, as to the money, this is an issue of fact that precludes summary judgment as to Plaintiff's promissory estoppel claim.

However, as to the laptop and surveillance system, Plaintiff has not identified a promise by Defendant that Plaintiff relied on to his detriment. Plaintiff claims Defendant promised to return the property to him but Plaintiff fails to explain what action he took in reliance on that promise that caused him damage. Therefore, as to the laptop and surveillance system, Plaintiff fails to point

to any evidence that would support a promissory estoppel claim, and the court finds that summary judgment should be granted to Defendant.

### 10.   Unjust Enrichment

"A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another. Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." Dema v. Tenet Physician Servs.-Hilton Head, Inc., 678 S.E.2d 430, 434 (S.C. 2009). "To recover restitution in the context of unjust enrichment, the plaintiff must show: (1) he conferred a non-gratuitous benefit on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." Inglese v. Beal, 742 S.E.2d 687, 691 (S.C. Ct. App. 2013) (citing Campbell v. Robinson, 726 S.E.2d 221, 228 (S.C. Ct. App. 2012)); Niggel Assocs., Inc. v. Polo's of N. Myrtle Beach, Inc., 374 S.E.2d 507, 509 (S.C. Ct. App. 1988)).

As previously explained, the parties' assertion of conflicting evidence in this matter precludes summary judgment on this claim. Plaintiff asserts that he sent money and property to Defendant, but Defendant kept, retained, or used some of the property for herself. See generally 66 Am. Jur. 2d Restitution and Implied Contracts § 4 ("A contract implied in law . . . hinges on the concept of unjust enrichment . . . [and] arises from an implied legal duty or obligation such as to repay money obtained by fraud or duress."). But Defendant asserts that Plaintiff gave her some of that property and the rest of the property was otherwise properly spent on Plaintiff's mother. Therefore, there is a dispute of fact as to whether Plaintiff can show that Defendant realized some benefit and whether it would be inequitable for Defendant to retain that benefit. See Inglese v.

Beal, 742 S.E.2d at 691.  Therefore, the parties' summary judgment motions should be denied as to the unjust enrichment claim.

## RECOMMENDATION

Based on the foregoing, the court recommends Defendant's motion for summary judgment (ECF Nos. 90 & 145) be granted as to Plaintiff's claims of fraud, trespass, replevin, intentional infliction of emotional distress, negligent infliction of emotional distress, and promissory estoppel (as to the laptop and surveillance system).  The court also recommends that the parties' motions for summary judgment (ECF Nos. 83, 90, 145) should be denied as to Plaintiff's claims of conversion, negligence, breach of contract, promissory estoppel (as to the money), and unjust enrichment.

September 25, 2020             Paige J. Gossett
Columbia, South Carolina       UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).